### THE HAYTIAN REPUBLIC.

### UNITED STATES v. THE HAYTIAN REPUBLIC.

(District Court, D. Oregon. November 5, 1894.)

No. 3,403.

JUDICIAL SALE—CASH BID.

At a sale by a marshal under a decree directing him to sell for not less than $15,000, with power to accept a bid of $10,000 in cash, balance on credit, if there was no cash bid for the full amount, the property was knocked down to petitioner for a cash bid of $16,050. It being past banking hours of a Saturday, and petitioner having only a certified check of $10,000, he tendered it to the marshal as part payment, with the statement that he could keep it as forfeit if petitioner did not pay the balance Monday morning. The marshal, immediately after stating that this would be satisfactory, refused to accept it, rejected the bid, and made a private sale to the next lowest bidder. *Held* that, as a cash sale required payment on the same day, petitioner could not complain.

Libel by the United States against the steamship Haytian Republic for breach of the revenue laws. It was sold under a decree forfeiting it to the United States. E. W. Price and Lee Wheeler petition that title be given them under their bid.

Rufus Mallory and James Gleason, for petitioners, Price and Wheeler.

C. E. S. Wood and S. B. Linthicum, for respondents Sutton and Beebe.

BELLINGER, District Judge.    E. W. Price and Lee Wheeler petition the court to set aside the sale heretofore made by the marshal of the steamer Haytian Republic, and to direct the marshal to correct his return so as to show that their bid of $16,050 at such sale was the highest and best bid thereat; that the ship was sold to them,—and praying for an order declaring the bill of sale of such ship to Sutton and Beebe to be fraudulent and void, and directing the marshal to convey the title thereof to them, and to deliver possession of such vessel to them, upon the payment to him of said sum of $16,-050.    The petition alleges in effect that the marshal was, by a decree of this court, directed to sell the Haytian Republic at public auction, and to receive no bid less than $15,000; that, acting under this decree, the marshal advertised the ship for sale at public auction to the highest bidder, for cash, at 2 o'clock in the afternoon of Saturday, October 6th; that there were two bidders at the sale—Charles F. Beebe and the petitioners; that the former bid $16,000 and the latter $16,050, whereupon the vessel was knocked down to them; that thereupon the parties left the vessel where the sale had taken place, and went to the office of the marshal; that no demand was made by the marshal, of the petitioners, to pay the sum bid forthwith, and their bid was not rejected for failure to so pay such amount, and that no resale was had; that the petitioners, within a reasonable time after the sale, to wit, within an hour thereafter, delivered to the marshal, as an earnest of their good faith, certified checks for $10,000, which were received by the marshal on account of their purchase; that they were prevented from procuring the remaining $6,050 by reason of the fact that it was then past banking hours, but that they notified the marshal that he could retain the $10,000 so paid, to be forfeit to the government should they fail to pay such balance immediately after banking hours on the following Monday, which payment at such time they promised to make; that the marshal informed the petitioners that what they proposed was satisfactory, and he directed the preparation of the receipt for the money paid; that thereupon Beebe interfered between the petitioners and the marshal, and persuaded the latter not to complete the transaction with the petitioners, and that Beebe and the marshal conspired and confederated together to prevent the petitioners from obtaining title to the vessel under their bid; that in pursuance of such conspiracy the marshal, at his office, pretended to reject petitioners' bid, refused to receipt to petitioners for the $10,000, or to receive such sum, and then made a private sale of the vessel to Beebe for $16,000, and gave the latter a bill of sale therefor; that within a reasonable time after such sale, being before the hour of 11 o'clock in the forenoon on Monday, October 8th, they tendered to the marshal $16,050, in compliance with their bid, which sum they have been at all times since, and are now, willing to pay.

Exceptions are filed to this petition, which raise the question as to its sufficiency to entitle the petitioners to the relief prayed for. The cases relied upon by the petitioners are cases where complaints were made by the owners of the property sold, or by persons having liens thereon, whose rights of property were injuriously

affected by sales for much less than the value of the property sold. In this case the contest is one between bidders. The petitioners are concerned only with their own title. Unless they acquired rights in the property by their bid and offer of payment, it is a matter of no consequence to them whether there was a fraud in the after-sale of the property or not. Ex parte State and State Bank, 15 Ark. 264. It is claimed that the offer of payment made before 11 o'clock on Monday following the sale was within a reasonable time for a cash payment, for the reason that the time of the sale (Saturday, at 2 p. m.) was after banking hours. A cash sale is necessarily a sale for cash to be paid at the time of sale. The purchaser must be in readiness to pay at the place of sale, if required. The officer making the sale may give time for payment, if he chooses, but he does so at his own risk. Because he may do this, it does not follow that he must do it, and his conduct in this respect is not ground of complaint, unless it has been one-sided, and has given one party an unfair advantage over another. The fact that the sale was after banking hours is immaterial, unless the officer making the sale makes use of that fact to exact specie, when the bidders were justified in relying upon the belief that checks, certificates, or current bills would be taken. In one of the cases cited by the petitioners the officer refused to accept current bills, and then refused a delay to enable the bidder to get specie, with the result that the property was sold for less than one-third the amount offered by such bidder. There were other circumstances showing a conspiracy to get the property at a ruinous sacrifice. Technically, a certified check is not cash. Such checks or certificates of deposit are used to avoid the inconvenience of carrying specie to the place of payment. Such a check, upon a convenient bank of known solvency, when transferred to the payee of money, is in effect a cash payment, since it operates to transfer the title to that much cash, convenient to his use, to such payee. The petitioners in this case could have provided themselves with such checks during banking hours. It was argued in petitioners' behalf that such checks do not meet the requirements of a cash bid. My conclusion is otherwise, and, moreover, it is common knowledge that it is customary to make large payments in this mode. The conduct of the petitioners in providing themselves with such a check for $10,000, to use as a payment at the sale, shows that they understood this, and that they acted upon the assumption that payment might be made in this way. It is an admitted fact, commented on at the hearing, that the court had ordered the marshal to accept a bid for $15,000,—$10,000 in cash, and the balance in credit, provided there was no cash bid to the amount of $15,000. It was for this reason that the petitioners were provided with a certificate of deposit for $10,000 and no more. It is said, however, that the petitioners only intended to back another bidder in such a bid, but that, upon being confronted with a cash bid of $16,000, they decided to bid for themselves. But whether they bid for themselves, or stood sponsor for another, it did not alter the provision they had made for making a cash payment. It is evident that the petitioners prepared themselves for this sale in the expectation that a sale would be made to

them, or to the friend for whom they were acting, for $10,000 in cash and the remainder in credit, and the controversy that has followed is solely due to the fact that they were disappointed in that expectation. But if the fact is as claimed the excuse cannot avail them. The authorities are clear that to constitute a cash sale the money must be paid within reasonable hours on the day of sale, and unless this is done no title or right passes, and if the officer makes a conveyance before payment the owner is not bound thereby. Ex parte State and State Bank, supra.

It is argued that the alleged agreement of the marshal to allow the petitioners until the following Monday in which to pay the remaining $6,050 relieved them from the necessity of paying such sum on the day of sale, if that was otherwise necessary. If the petitioners were misled by such an understanding or promise, I should be disposed to give to it the effect contended for, although the marshal had no right to make such promise. The alleged promise was after the sale. Shortly afterwards, and while the parties were together, the marshal reconsidered his action, and rejected the petitioners' bid. I am of opinion he acted rightfully, in so far as what he did relates to the final rejection of petitioners' bid. As to whether he should have put the property up for resale is a question that does not concern these petitioners. If the government, to whom the steamer was wholly forfeited, and for whose sole benefit the sale was made, is satisfied with the sale, others, not having complied with the terms of sale so as to acquire rights in the premises, cannot complain. The character of the petitioners' bid is not changed by the fact that they offered to forfeit $10,000 if they failed to pay the $6,050 on the following Monday. A secured payment is not a cash payment. If the marshal had accepted this offer, and had kept the matter open until the following Monday, he could then have rejected it, and refused to accept the unpaid balance, and it would have been his duty to do so, had the owner so directed. He was not authorized to give credit upon a cash sale. Chase v. Monroe, 10 Fost. (N. H.) 433. It does not appear that the marshal subjected the petitioners to any inconvenience in the payment required, not necessarily incident to any sale, and that they could not provide against, and to which all other bidders were not equally subject. He does not appear to have acted unfairly towards them. The fact that he was at first willing to waive cash payment as to $6,050 of the purchase, but subsequently, and while the situation of the petitioners remained the same, receded from that position, as he might properly do, shows the contrary. The exceptions are allowed.